HIRAM GILBERT *vs.* THE TRUSTEES OF THE EAST NEWARK COMPANY and others.

A specific performance of an agreement in writing will not be decreed where it has not been executed by all the parties.

And where some of the parties to an agreement were prevented from signing it by the fraudulent conduct of one of the parties in interest, a court of equity would not feel itself justified, upon such considerations, in decreeing the specific performance of an agreement which had never been executed.

In a case in which promissory notes were given in payment of the balance of the consideration money on a parol contract for the purchase of lands, and an injunction was obtained by the party giving such notes, restraining the party receiving them from negotiating them, or enforcing their payment *held*, that this was not such part performance of the agreement as would take the case out of the operation of the statute of frauds.

The governing rule on this subject is, that the court will not consider anything such part performance as will take the case out of the statute which does

Gilbert *v.* Trustees of East Newark Co.

not put a party into a situation which is a fraud upon him, unless the agreement is fully performed.

An agreement for the sale of lands stipulated that the vendees were to pay $127,000 as the consideration money, within five years from the date of agreement, with a provision for payment of interest. The vendees had the right to commence selling off lots immediately, provided they paid to the vendors $100 per lot, and for such lots the vendors, on the receipt of the money, were obliged to give a deed. The vendees agreed to drain the premises, to dig down the high land, and to fill in the low, and to make other improvements of a like character. The consideration money was paid, partly in money, partly in bonds secured by mortgages on the premises, and partly in promissory notes.

*Held,* that upon the payment of the purchase money, the vendees were entitled to a conveyance of the land, even upon the assumption that they had not made the improvements according to their agreement; that upon the face of the agreement, the object of the covenants for improvements was for no other purpose than to secure the payment of the purchase money.

*Held further,* that the covenants for improvements were personal covenants, and that there was nothing pledged for their fulfilment but the personal responsibility of the parties.

*Held further,* that the vendors could not withold a conveyance on the ground that the value of the mortgages taken by them depended on the faithful performance of the covenants to improve the property; that the vendees, having thus far performed their contract, and paid the consideration money, the vendors have no right to hold the land as a security for any future default.

*A. Whitehead* and *A. O. Zabriskie,* for complainant.

*C. Parker* and *E. W. Whelpley,* for defendants.

State of the case.

The Trustees of the East Newark Company were incorporated with power to purchase the real estate formerly belonging to the East Newark Company, in the county of Hudson, on the Passaic river opposite the city of Newark. They had power to improve the said land, and to sell it off for purposes of speculation. On the fourth of August, 1851, they entered into a written contract with the complainant and one Peter W. Longley, whereby it was witnessed that the said company, in consideration of the sum of $127,000 and of the several covenants and agreements in the said writing contained,

which, on the part and behalf of the said complainant and Longley, were to be first paid, kept, and performed, they, the said trustees, &c., did thereby covenant and agree as follows:

That the title to the said estate called East Newark, being then vested in the said incorporated company, they, the said company, the party of the first part to said agreement, did covenant, promise, and agree, to and with the said Longley and the complainant, that they might and were thereby authorized to enter into and upon said land and premises called East Newark, and to drain the same in the most advisable manner in the judgment of the said Longley and the complainant, to dig down the high land, and fill up the low land, or meadow, with the earth to be removed from the upland to the extent that they might deem reasonable and advisable, and to regulate and fill up the streets on every part of the premises to the full width of the streets laid down on the map of East Newark, and to the height of the embankment that then existed between the railroad bridge and the turnpike bridge next above the railroad bridge on the Passaic river; to amend and repair the outside bank, build wharves or bulkheads, as they were by law permitted to do, and to do any and every other act, matter, or thing needful or necessary to be done that might improve the said premises in the most advisable manner in their judgment.

And the said Longley and complainant, by the said agreement, did jointly and severally, for themselves, covenant, promise, and agree, to and with the said the trustees of the East Newark Company, in manner and form following, that is to say: that they would forthwith, within ninety days from the date of said agreement, enter into and upon said premises, and proceed to improve the said estate called East Newark; that they would proceed to drain the same in the most advisable manner in their judgment; that they would dig down the high land, and fill up and regulate the low land, or meadows, with the

earth to be removed from the upland to the extent that they might deem reasonable and advisable, and would regulate and fill up the streets to the extent they might deem it advisable, to the full width of each street and height of the embankment that then existed between the railroad bridge and the turnpike bridge next above the railroad bridge on the Passaic river; that they would amend and repair the outside bank, and repair the breaches in the same, putting in the sluices and sluice-gates, whenever it should be deemed necessary to draw off the water, in such manner as they should deem most advisable; that they would, if they deemed it advisable, build one or more wharves or bulkheads, or sell to other persons, and permit the same to be done, as by law they were permitted to do; and would do any and every other act, matter, or thing needful and necessary to be done that they might judge expedient to improve the said premises in the most advisable manner, and render the same fit to be occupied and improved by purchasers.

And the said Trustees of the East Newark Company, by the said agreement, did further covenant, promise, and agree, to and with said Longley and the complainant, that upon the faithful performance of said agreement, said Longley and the complainant might contract to bargain and sell the said premises, or any part thereof, for the best price or prices that could be had or obtained for the same, not however at a less rate than one hundred dollars per lot, save and except certain lots, pieces, or parcels of land and premises which were known and distinguished on a map of lots in East Newark, made in 1845.

And it was by said agreement further agreed, that the said the Trustees of the East Newark Company should and would, whenever required so to do, execute and deliver a warranty deed, (such as had been printed and submitted to the said Longley and the complainant for their approbation, and which they had approved of,) upon

being paid at and after the rate of one hundred dollars per lot for every lot included in said deed, and including the lots under water, of twenty-five feet front, sold and lying north of Somerset street, and between that and the turnpike road, and between the river on the west and the eastern line of the estate of the company on the east, until they should have paid the full amount of one hundred and twenty-seven thousand dollars, with interest, as was therein after mentioned; and if said Longley and the complainant should sell any part of the estate south of Somerset street, including the water right, before they had paid the full amount of one hundred and twenty-seven thousand dollars, the consideration money, with interest, as therein after mentioned, then one half of the amount for which such last mentioned estate should be sold for should be paid to the company, at the time of the delivery of the deed required, towards extinguishment of the price or consideration of the land aforesaid, until the whole was paid, with interest, as was therein after mentioned.

And the said Longley and the complainant, by said agreement, did jointly and severally covenant, promise, and agree, to and with the said the Trustees of the East Newark Company, in manner and form following:

That they would use their best endeavor to sell the lots and estates therein before mentioned at public or private sale, and cause improvements to be made on the said land.

That they would, on receipt of one hundred and fifty dollars in money for each and every lot sold, pay to the said the East Newark Company the sum of one hundred dollars; that then and in such case they should have the right to demand a deed for any lot they might designate, and so on, from time to time, as sales should be made and moneys received; but no deed should be demanded, unless one hundred dollars shall have been paid therefor. And it was by said agreement further declared, that said

Longley and the complainant would guaranty to pay the whole of the consideration money, one hundred and twenty-seven thousand dollars, within five years from the date of said agreement, with interest on the sum of sixty-five thousand dollars from and after the fourth day of August, one thousand eight hundred and fifty-two, less interest on any part of the principal sum of sixty-five thousand dollars which they might have paid prior to the said fourth of August, 1851.

And it was, by said agreement, further expressly agreed and to be understood, that the said the Trustees of the East Newark Company were in no manner or way to be held liable or responsible to any person or persons whomsoever with whom the said Longley and the complainant might enter into any contract or agreement in relation to the sale of the said premises, or for any work to be done thereon, or services to be performed in relation to the same; and that the said the Trustees of the East Newark Company were to be held liable, only on the requisition of said Longley and the complainant, to convey any of the land and premises, and then only on the payment of the sum of money in said agreement stipulated to be first paid on the delivery of the deed so required by the said Longley and the complainant.

And it was by said agreement, further expressly agreed, declared, and to be understood, that in case the said Longley and the complainant should fail in the true and faithful performance of any of the covenants and agreements therein contained, which, on their part and behoof, were to be paid, kept, done, and performed, and should continue and neglect to pay, perform, and keep the same for thirty days next after any notice and demand in writing to pay, perform, and keep the same, then said agreement, and everything therein contained, so far as regarded the right of the said Longley and the complainant to retain any right or interest in the said premises, or to claim any deed for the same, or any part thereof, except as

Q*

therein after provided, should cease, determine, and be utterly null and void, anything in said agreement contained to the contrary thereof in anywise notwithstanding.

And it was further mutually agreed, that the said Longley and the complainant should be at liberty, at any time or times thereafter, to abandon and give up said agreement, upon giving thirty days' written notice to the said trustees of their intention so to do, in which case said agreement should cease, determine, and become null and void, except only that the said trustees should convey any lot or lots which the said Longley and the complainant might have previously contracted to sell, upon receiving the sum of $100 for each and every of such lots so contracted to be sold within one year after receiving such written notice as aforesaid; and in case the complainant and Longley should abandon said agreement, they should forfeit all claim for any improvements which they might have made on said premises.

There were other covenants in the agreement, but they are quite immaterial to the issue between the parties. On the 31st of January following the date of the agreement, Longley sold and conveyed all his interest therein to the complainant, and on the twelfth day of October following the complainant sold to one Edgar M. Smith a one-third interest in the said agreement and lands and premises. On the said twelfth of October, an agreement in writing was entered into between the said trustees, of the one part, and the said Smith and the complainant, of the other part, whereby it was recited and witnessed as follows:

That whereas an agreement was made and executed on the fourth day of August (1851), one thousand eight hundred and fifty-one, between the before named the Trustees of the East Newark Company, of the first part, and Peter W. Longley, of the city of New York, in the state of New York, and the complainant, of the second

part, in relation to the estate called East Newark, lying and being in the township of Harrison, in the county of Hudson aforesaid, as by reference to one part of the original agreement, in the possession of the said the Trustees of the East Newark Company, or to the counterpart thereof, in the hands of the complainant and Edgar M. Smith, or to the record thereof, in the office of the clerk of the county of Hudson, in Lib. 24 of Deeds, from page 171 to 179, would more fully and at large appear : and whereas, since the execution of the said original agreement, the said Peter W. Longley had sold and transferred his interest in the said agreement and to the estate therein mentioned to the complainant, since which the complainant had sold and transferred an interest in the said agreement, and to the estate therein mentioned, to the said Edgar M. Smith, who had agreed to become responsible to the said the Trustees of the East Newark Company for the due and faithful performance of the existing contract, and any new arrangement that might be made in relation thereto, or to any and every part thereof.

And whereas the complainant and the said Edgar M. Smith had asked for an extension of time to carry out and perform the agreements contained in the said original contract, so far as regarded the ultimate payment of the whole of the consideration money, until the fourth day of August (1860), eighteen hundred and sixty, and for other matters, as therein after mentioned, and the said the Trustees of the East Newark Company had agreed to grant the same upon certain terms and conditions, as was therein after mentioned.

Whereupon said agreement witnessed, that for and in consideration of the covenants and agreements therein contained, which, on the part and behalf of the respective parties thereto were to be paid, kept, done, and performed, the said the Trustees of the East Newark Company covenanted and agreed to and with the complainant and said Edgar M. Smith, in manner following, that is to say :

First, that they would extend the time for the ultimate payment of the consideration money, and for the due and faithful performance of the original agreement by the complainant and said Edgar M. Smith in relation thereto, until the fourth day of August (1860), eighteen hundred and sixty, except as herein after mentioned, provided the complainant and said Edgar M. Smith should, on or before the first day of November (1853), eighteen hundred and fifty-three, well and truly pay the amount of the debt then due and owing to Henry Young, and which was secured to be paid by a lien on the said estate at East Newark, and procure from Henry Young a release and conveyance of all his right, title, and interest in the said estate at East Newark, and deliver the same to the Trustees of the East Newark Company duly acknowledged, unless the said Henry Young, upon being paid, or a legal tender of payment being made to him of the whole debt due and owing to him as aforesaid, should refuse to execute, acknowledge, and deliver such release; and in case the said debt was not paid off and discharged to Henry Young, and a release of the estate obtained from him, and delivered to the said trustees, then the said provision for an extension of time was to cease and become void and of none effect, and the said original agreement, and the covenants and agreements therein contained, to be and remain in full force and virtue as if this agreement had not been made. And provided also, that nothing in said subsequent agreement contained should exempt the said Longley and the complainant, as well as the said Smith and the complainant, from being compelled to perform the said original agreement, so far as related to draining the land, digging down the high land, and filling up the low land, or meadows, with earth, to be removed from the upland, and to regulate and to fill up the streets, to amend and repair the outside bank, build wharves and bulkheads, or cause them to be built, and to do any or every other act, matter, or thing needful and necessary to

be done that might improve the said premises in the most advisable manner in their judgment, and according to the tenor, true intent, and meaning of the said original agreement, and render the same fit to be occupied and improved by the purchasers. And the said Smith and the complainant did thereby further covenant and agree, that Anthony Dey, the president of the board of Trustees of the said East Newark Company, should be paid the sum of $2000 per annum, until the 4th of August, 1860, or until the whole amount of purchase money, with the interest thereon according to said contract, should be paid in manner following, that is to say :

The complainant and said Smith covenanted and agreed to deliver to Anthony Dey, president of the company, on demand, at any time in the month of October of every year previous to the fourth of August (1860), their joint and several notes, payable to the order of Anthony Dey, to the amount of $2000, payable as follows : $500 on the 15th of November next thereafter; $500 on the 15th of February next thereafter; $500 on the 15th of May next thereafter; and $500 on the 15th of August next thereafter, in any of the said years. These sums were not to bear interest, and the amounts so paid without interest were to be credited on the first account coming due on the aforesaid contract after the sum of $65,000, and interest money due thereon, had been paid; and for every one hundred dollars so paid to Henry Young or Anthony Dey, in manner aforesaid, it was agreed deeds and releases for lots should be given, at the rate of one lot for every one hundred dollars paid at the several times when the complainant and said Smith were entitled to receive the said deeds, according to the several agreements made.

And the complainant and said Smith did, by said agreement, further agree that interest should be paid by them, in addition to the interest in the original contract, on the whole sum remaining unpaid on and after the

fourth day of August, 1856; the precise balance should be stated at the end of every year, and the interest should be paid half-yearly, on the 4th day of August and on the 4th day of February in each year, until the whole amount due was paid.

And the complainant and said Smith did further agree to waive their right to abandon the original agreement, and also this agreement, after the fourth day of August, 1856, reserving the right to do so at any time previous to the 4th of August, 1856, if they should think it expedient so to do, according to the terms of the original agreement.

The Trustees of the East Newark Company did further agree, that when the complainant and said Smith should have well and truly, according to the spirit, true intent, and meaning of the original agreement and of this agreement, paid, done, performed, and kept all the covenants and agreements therein contained, which, on the part of said Longley and the complainant, and the complainant and said Smith, were to be paid, fulfilled, and kept, then and in that case the trustees should and would convey all the rest, residue, and remainder of the estate at East Newark that had not been sold and conveyed, but which remained unsold, to the complainant and said Smith, and to their heirs and assigns for ever.

And it was thereby further agreed by the said trustees, that all the covenants in said original agreement made on the part of the said trustees should extend to the complainant and said Smith, and not to the executors, administrators, and assigns of such survivor.

On the first of May, 1856, the complainant, Smith, alleged that they had paid the full amount of the purchase money, as specified in the several agreements, and had fulfilled all their covenants, and they claimed a conveyance of the property, the title to which remained in the trustees. On the other hand, the trustees insisted there was a balance of the purchase money, which amounted to

$8307.22, unpaid, and they also insisted that the covenants respecting the improvement of the property had not been fully performed. On these grounds, they refused to execute the conveyance.

The bill, after setting forth the foregoing agreements and facts, and which are undisputed by the defendants, then alleges, that the complainant and said Smith, having failed in all their efforts to obtain a conveyance of the residue of the lands, and being very desirous to have the title and control of the same, in order to dispose thereof as opportunity might offer, and disembarrass themselves in reference to the debts and liabilities they had incurred in improving the same, and to save delay and the vexation and costs of litigation, and on such accounts being willing to submit to some injustice and sacrifice of their interest, about the 1st of August, 1853, came to a final settlement as to the consideration money of the said lands and premises, and the conveyance of the said residue thereof, which it was agreed that the complainant and said Smith should secure to be paid the further sum of $6921, which should be in full of the said consideration money expressed in said first mentioned agreement; and that the complainant and said Smith, together with Gerrit Smith, should enter into a covenant for the performance of such of the covenants contained in said original agreement, which the complainant and said Smith were bound to perform after the whole of the aforesaid consideration money was paid, that the complainant and said Smith should guaranty the payment of certain bonds, which had been before then received by said company in payment of consideration money, as herein after mentioned, and that the said Trustees of the East Newark Company would thereupon convey to the complainant and said Smith, or to such persons as they might appoint, the said incorporation called the Trustees of the East Newark Company, and all their chartered rights, privileges, and franchises, and all its stock and property, in-

cluding the residue of said lands and premises; that in part performance of said agreement on the part of the complainant and said Smith, and in order to secure the payment of said sum of six thousand nine hundred and twenty-one dollars and sixty-one cents, the complainant and said Smith made and signed their nine joint and several promissory notes, bearing date the first day of August, in the year of our Lord one thousand eight hundred and fifty-three, payable to the order of one or the other of them, and endorsed by them accordingly, four of which were for the sum of five hundred dollars each, and payable, respectively, on the fifteenth day of November, one thousand eight hundred and fifty-three, and the fifteenth days of February, May, and August, one thousand eight hundred and fifty-four; four other of said notes were for one thousand dollars each, payable, respectively, on the first days of March, June, September, and December, one thousand eight hundred and fifty-four; and the other of said notes were for the sum of nine hundred and twenty-one dollars and sixty-one cents, and payable on the first day of March, in the year one thousand eight hundred and fifty-five. And the said Smith further, in pursuance of the said agreement, and in order to secure the payment of said promissory notes, together with Amanda D., his wife, made and executed a certain indenture of mortgage to the said Anthony Dey on and for forty-two lots, being part of said tract or parcel of land called East Newark, and each lot being twenty-five feet front and rear, and one hundred feet deep, and bearing date the first day of August, in said year, eighteen hundred and fifty-three, and duly acknowledged by said Smith and his said wife on the seventeenth day of the same month; that further, in pursuance of said arrangement, an agreement in writing was prepared by the said Anthony Dey, with the assent of the said Trustees of the East Newark Company, bearing date on or about the thirteenth day of August, in the year of our Lord one

thousand eight hundred and fifty-three, purporting to be made between Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller, who, it is certified by said agreement, were then the Trustees of the East Newark Company, an incorporated company in the state of New Jersey, of the first part, and the complainant and said Smith and Gerrit Smith, of the second part; and by the said agreement it was recited, covenanted, and agreed, in substance and effect, as herein after set forth, that is to say:

Whereas an agreement was made and executed, on the fourth day of August, 1851, between the Trustees of the East Newark Company, of the first part, and Longley and the complainant, of the second part, in relation to the estate called East Newark, as by reference to one part of the original agreement, in possession of the said trustees, party of the first part, or to the counterpart thereof, in the hands of the complainant and Smith, or to the record thereof, in the office of the clerk of the county of Hudson, in Lib. 24 of Deeds, from page 171 to 179, would more fully and at large appear.

And whereas, since the execution of the said original agreement, the said Longley had sold and transferred his interest in the said agreement, and to the estate therein mentioned, to the complainant, since which the complainant had sold and transferred an interest in the said agreement, and to the estate therein mentioned, to the said Smith, who, by articles of agreement, dated 12th October, 1852, agreed to become responsible to the said Trustees of the East Newark Company for the due and faithful performance of the existing contract, and any new arrangement that might be made in relation thereto, and to any and every part thereof.

And whereas the complainant and Smith had paid and satisfied the said company for the whole of the consideration money agreed to be paid for the said estate called East Newark (or otherwise secure the same to be paid

in a satisfactory manner) so that nothing remained to be paid, done, or performed (in the said original agreements) save and except " as related to draining the land, digging down the high land, and filling up the low land, or meadows, with the earth to be removed from the upland, and to regulate and fill up the streets; to amend and repair the outside bank, build wharves and bulkheads, or cause them to be built, and to do any and every other act, matter, or thing needful and necessary to be done that might improve the said premises in the most advisable manner in their judgment, and according to the tenor, true intent, and meaning of the said original agreement, and render the same fit to be occupied and improved by the purchasers;" and also save and except certain covenants and agreements therein made by the said company, at the request of the complainant and said Smith, to sell and convey certain parts and parcels of the said estate as the complainant and said Smith should require, and the use of certain streets, as in the said agreement was therein mentioned.

And whereas, also, the said company did covenant and agree with the complainant and said Smith, that when the complainant and said Smith should have well and truly, according to the spirit, true intent, and meaning of the said several agreements, paid, done, performed, and kept all the covenants and agreements therein contained, which on the part of said Longley and the complainant and of the complainant and said Smith were to be paid, fulfilled, and kept, then and in that case the Trustees of the East Newark Company should and would convey all the rest, residue, and remainder of the estate at East Newark, that had not been sold and conveyed, but which remained unsold, to the complainant and said Smith, and to their heirs and assigns for ever.

And whereas the complainant and said Smith, having paid, or secured to be paid, the consideration moneys for the said estate, as therein before mentioned, felt desirous

to possess themselves of the residue of said real estate unsold, and the benefit and advantage of the incorporated company, and had applied to the trustees of said company to obtain the same, and had proposed and offered Gerrit Smith as security for the true and faithful performance of such of the covenants and agreements on their part that remained to be fulfilled, according to the tenor and effect, true intent and meaning, of said two original agreements, and which they were bound to perform, fulfil, and keep, after said consideration or purchase money mentioned in said agreements should have been paid and satisfied, and more especially the covenants and agreements on the part of the trustees, which they had entered into at the request of the complainant and said Smith, as therein before mentioned.

And said agreement did thereupon witness, that the said the Trustees of the East Newark Company, in consideration of the premises and of the covenants and agreements therein after mentioned to be fulfilled and kept by and on the part of the complainant and said Smith and Gerrit Smith, and in the further consideration of the sum of ten dollars, to them paid by the complainant and said Smith and Gerrit Smith, did, for themselves jointly and severally, and for their respective heirs, executors, and administrators, covenant, promise, grant, and agree, to and with the complainant and said Smith and Gerrit Smith, that as soon after the execution of said agreement as conveniently might be, the Trustees of the East Newark Company would take such measures as might be legal and necessary to invest the complainant and said Smith, or such person or persons as they might designate and appoint, with the right and title to the said corporation, denominated the Trustees of the East Newark Company, and all its chartered rights, privileges, and franchises, and all its stock and property, including the said lands and premises remaining unconveyed as aforesaid, by resigning their respective offices as Trustees of the said East

Newark Company successively, and appointing or substituting, successively, in their places such persons as the complainant and Smith might designate and request to have so substituted and appointed; or otherwise, that they would resign their respective offices as aforesaid, or in such manner as might be legal and expedient, and by a new election, cause and permit such other persons to be elected in their places and stead as the complainant and Smith might designate and request to be so elected; and that thereupon the said the Trustees of the East Newark Company should and would deliver to said new trustees, so substituted and appointed or elected, the charter or act of incorporation of said company, and all other muniments of title to and for said estate and lands at East Newark, so that they might proceed in the exercise of the corporate privileges of said East Newark Company and the regular management of the business authorized by the charter of said company.   It being understood that the object and intent of substituting and appointing or electing new trustees as aforesaid was to transfer to the complainant and said Smith, or to such persons as they might designate, the title to said corporation, all its stock and its privileges and franchises, and the beneficial title and interest in and to the said lands and premises at East Newark remaining unconveyed as aforesaid.

And said agreement further witnessed, that in consideration of the premises and of the sum of ten dollars to them paid by the said the Trustees of the East Newark Company, the receipt whereof was thereby acknowledged, the complainant and said Smith and Gerrit Smith did thereby, for themselves, their heirs, executors, and administrators, covenant, promise, and agree, to and with the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller, and the survivors and survivor of them, and the executors and administrators of such survivor, that the complainant and said

Smith should and would, with all due diligence, proceed to the due performance of all and singular such of the covenants and agreements contained in the aforesaid original agreements therein before referred to, as according to the tenor and effect, true intent and meaning of the aforesaid original agreements, the complainant and Smith were thereby bound to fulfil, perform, and keep, after payment and satisfaction of the whole purchase money mentioned in said original agreements.

It was by said agreement expressly agreed, declared, and to be understood, that in case the complainant and Smith should fail in the true and faithful performance of any of the matters therein before mentioned, which on their part and behalf were to be kept, done, and performed, as therein mentioned, covenanted, and agreed, and should continue to neglect to perform and keep the same for thirty days next after any notice and demand in writing of the said Trustees of the East Newark Company, or any one of them duly authorized by said trustees to give such notice, then the said trustees might cause the same to be done, and the complainant and said Smith and Gerrit Smith would pay all just damages, or necessary and proper expenses, that might be incurred and paid for the performance thereof; that the said agreement was duly executed, in two parts, by complainant and said Smith and Gerrit Smith, under their hands and seals, and by the said Anthony Dey, under his hand and seal, and the same, having been so in part executed, was taken by said Anthony Dey for the purpose of procuring the signatures and execution of the same by the other trustees of said company, parties to the same, with the distinct understanding and agreement that he would do so with all convenient despatch, and that then the said agreement should be delivered, each party taking one part thereof; that it was the understanding and agreement that the said promissory notes and mortgage and said agreement in writing should be delivered at the same time; but before

R*

the said agreement had been fully executed by the parties of the first part thereto, as represented by said Anthony Dey, in consequence, as he alleged, of the absence of David Selden, one of said parties, and also before said mortgage had been executed and acknowledged by the said Edgar M. Smith and his wife, and on or about the twelfth day of September, eighteen hundred and fifty-three, the said Anthony Dey applied to the complainant and said Smith, and requested them to deliver to him the said promissory notes, at the same time promising to have said agreement fully executed and perfected, and to deliver the same to the complainant and said Smith within a short time or a few days; and the complainant and said Smith, confiding in the said promise and representations of said Anthony Dey, delivered to him the said nine promissory notes, and the said Anthony Dey thereupon drew up and delivered to the complainant and said Smith a receipt in the words and figures following, that is to say:

"Received from Smith & Gilbert their nine promissory notes on settlement of the account between Anthony Dey and them for the consideration of East Newark, which are to be secured by mortgage, payable as follows, namely—all dated 1st August, 1853.

| One note for | $500, | due and payable | 15—18 Nov. 1853, |
|---|---|---|---|
| do. | 500, | do. | 15—18 Feb. 1854, |
| do. | 500, | do. | 15—18 May 1854, |
| do. | 500, | do. | 15—18 Aug. 1854, |
| do. | 1000, | do. | 1—4 March 1854, |
| do. | 1000, | do. | 1—4 June, 1854, |
| do. | 1000, | do. | 1—4 Sept. 1854, |
| do. | 1000, | do. | 1—4 Dec. 1854, |
| do. | 921.61, | do. | 1—4 March 1855, |

$6921.61.

When papers are completed and exchanged, then this to be cancelled.

12th September, 1853.                    ANTHONY DEY."

And the complainant further shows, that the said papers referred to in said receipt were the said mortgage made by said Smith and his wife, as before mentioned, and said guarantees and the said agreement between the Trustees of the East Newark Company and the complainant and said Smith and Gerrit Smith, which had been before in part executed, as before mentioned; that on the seventeenth day of September last aforesaid, the execution of said mortgage was duly acknowledged by said Smith and his wife, and on or about the same day said mortgage was delivered to the said Anthony Dey, at his request, to be registered, he then still representing to and promising the complainant and said Smith to have said agreement fully executed and perfected, and deliver the same to them without delay; that at the several times of the dates of said promissory notes and mortgage of the said in part executed agreement, of the delivery to said Anthony Dey of said notes and mortgage, and the date and delivery of said receipt, the said Anthony Dey was, in equity, the owner, and the only person beneficially interested in all the stock, property, and effects of the said Trustees of the East Newark Company, and was president of the board of directors and executive committee of said company, and had substantially the entire management and control of said company, its affairs, business, and property; that soon after the delivery, by the complainant and the said Smith, of said nine promissory notes, and said mortgage securing the payment thereof, as aforesaid, to said Anthony Dey, as aforesaid, the complainant and said Smith applied to the said company, and to the said Anthony Dey, individually and as president and executive committee of said company, for their part of said agreement last mentioned, and to have the same delivered to them, and for the performance and fulfilment thereof, and on various occasions and times, pressed the said application, insisting upon their right to receive the same, and have it performed and fulfilled; but the said company and said An-

thony Dey neglected and refused to deliver the same to them, or to perform and fulfil the same, and on the contrary thereof, gave the complainant and said Smith to understand, and informed them that the trustee would not deliver the said agreement, nor transfer the agreement or corporation, nor convey the residue of said lands.

The bill then goes on to state the particulars in which the complainant and Smith performed the contract—the amount of money expended in the improvements—the refusal of the other parties, except Dey, to execute the agreement—and the conveyance by the trustees to the complainant and Smith of 500 lots.

Subsequent to all the foregoing transactions and agreements, *viz.* on the 10th of November, 1853, Smith, by his deed, conveyed to the complainant all his right, title, and interest in and to the said agreements, and to all the proceeds of sales of said land derived under the said agreements, and also all his right, title, and interest in and to the aforesaid lands at East Newark mentioned in said agreements.

The prayer of the bill is, that the said trustees and the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller may be required to produce the said agreement of the 13th of August, 1853, and if the same shall not appear to have been signed and sealed, that they may be ordered and required to sign and seal the same, and that it may be delivered to the complainant, and that the said trustees and said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller may be decreed to specifically perform and fulfil the said agreement, by taking such measures as may be legal and necessary to invest the complainant and said Smith, and such person and persons as they may designate, with the right and title to the said corporation, and all its chartered rights, stock, and property, including the lands unconveyed by the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S.

Miller, resigning their respective offices as trustees, and appointing, successively, in their places such persons as the complainant and said Smith may request to have so substituted and appointed, or otherwise, that they may be decreed to resign their respective offices as aforesaid, or in such manner as may be legal and expedient, and by a new election, cause and permit such other persons to be elected in their places and stead as the complainant and said Smith may designate and request to be so elected; and that thereupon the said Trustees of the East Newark Company, and the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller may deliver, or cause to be delivered, to said new trustees, so substituted and appointed or elected, the charter or act of incorporation of said company, and all other muniments of title to and for said estate and lands at East Newark, so that they may proceed in the exercise of the corporate privileges of the said East Newark Company, and the regular management of the business authorized by the charter of said company; and that the said substitution and appointment, or election, of said new trustees may be in such manner as to transfer to the complainant and said Smith, or to such persons as they may designate, the title to said corporation, all its stock and its privileges and franchises, and the beneficial title and interest to the said lands and premises at East Newark remaining unconveyed as aforesaid, the complainant and said Smith having duly performed and fulfilled the various matters before mentioned which were agreed to be done in consideration of said agreement on their part, and the complainant and the said Smith and Gerrit Smith being ready and willing to fulfil and perform the covenant and agreement mentioned on their part to be fulfilled and performed, according to the true intent and meaning thereof, or otherwise, that the said the Trustees of the East Newark Company, and the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller

may be decreed to convey, or to cause to be conveyed, to the complainant, his heirs and assigns, by such deed of conveyance as this court may direct, all the residue of said lands at East Newark aforesaid remaining unsold and unconveyed as aforesaid; or if it should be thought more just and equitable so to decree, then that an account may be taken of the said purchase money agreed to be paid as aforesaid to the said the Trustees of the East Newark Company for the said tract of land as aforesaid, with all the interest payable thereon, and of all the payments made thereon by the complainant and his associates as aforesaid, making a just rebate or deduction for interest on said instalment upon which interest was not payable until the fourth day of August, eighteen hundred and fifty-six; and if upon the taking of such account it shall appear that the aforesaid purchase money has been paid and satisfied, then that it may be decreed that the said the Trustees of the East Newark Company, and the said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller, the said trustees or directors of said company, may convey, or cause to be conveyed, to the complainant the said residue of said lands and premises, and also to pay, or cause to be paid, to the complainant the amount which may upon the taking of said account be found to have been paid over and above what was sufficient to pay said purchase money in full; or if it shall appear, upon taking of such account, that said purchase money has not been fully paid and satisfied, then that it may be decreed, that upon the payment of any amount found unpaid on account thereof, which, if anything, the complainant is ready and willing and hereby offers to pay, that the said the East Newark Company, and said Anthony Dey, James R. Dey, David Selden, Samuel P. Williams, and Isaac S. Miller may convey, or cause to be conveyed, to the complainant the aforesaid residue of said lands and premises.

THE CHANCELLOR.   The complainant is not entitled to a specific performance of the agreement of the 30th of August, 1853.   The agreement was not executed by the parties.   Even admitting the allegations of the bill to be true, that the parties who did not sign it were prevented by the fraudulent interference of Anthony Dey, and that he alone is interested in the subject matter of the agreement, the court would not be justified, upon such considerations, in decreeing the specific performance of an agreement which had never been executed.   But these considerations might have a bearing upon another ground taken—that the complainant is entitled to the specific performance of the agreement as a parol agreement which has been part performed.   I do not think, however, that there has been such a *part performance* as entitles the complainant to a decree in his favor.

In the first place, Dey was not authorized, as the agent of the other defendants, to make the agreement.   He had very full powers given him to act as agent for the board of trustees, as appears by the minutes of the board, but certainly nothing to authorize him to make a disposition of the chartered rights by a substitution of new trustees for the old ones.   Nor is there any evidence that the parties named in the agreement, and who did not sign it, gave their sanction to it.   They certainly did not do it directly.   They refused to do so, as appears by the minutes of the 11th of November, 1853, and by other evidence in the cause.

But what are the acts of part performance which are relied upon ?   By the agreement, as it appears in writing, there was nothing for the complainant to do but to give Gerrit Smith as a guarantor for the faithful performance, by Smith and the complainant, of the agreements of the 4th of August, 1851, and of the 12th of October, 1852, and to give the promissory notes agreed upon in payment of the balance of the consideration money.   The guarantee has not been given.   It is true Gerrit Smith signed

the agreement of the 30th of August, but as the agreement was not perfected by its execution, the signature of Smith is a mere nullity. The promissory notes were given, but the complainant cannot claim this as part performance. He has applied to this court, and has obtained its injunction to prevent Anthony Dey's negotiating the notes or enforcing the payment. The complainant has not been prejudiced by giving the notes, and a party can rely upon nothing as a part performance which is not prejudicial to him. The court ought not to consider anything such a part performance as will take a case out of the statute, which does not put a party into a situation which is a fraud upon him, unless the agreement is fully performed. At all events, this is the governing rule in cases of this sort. 2 *Story's Eq. J.* § 761. I think it is clear enough that the complainant gave the notes, and that Dey received them, with a view to the agreement being performed. I do not think there is evidence of an acquiescence of the other parties that Dey should retain them for that purpose. The money was coming to Dey, and the other parties had no other control of the matter than that which they exercised, which was a refusal to complete the agreement which Dey had made with the complainant.

The bill has an alternate prayer, that in case the court should decide that the complainant is not entitled to the specific performance of the last agreement, that the defendants may be decreed to convey to the complainant all the residue of the East Newark lands embraced in the original contract of the parties. This involves the true construction of the two first agreements already referred to, and, in a measure, the rights of the respective parties under them.

Under the agreement of the 4th of August, 1851, when could the vendees call upon the vendors for a conveyance of the land? They were to pay a consideration of one hundred and twenty-seven thousand dollars for the land,

within five years from the date of the agreement, with interest on the sum of sixty-five thousand dollars from and after the fourth of August, 1852, less interest on any part of the principal sum of $65,000, which they might have paid prior to the said fourth of August, 1852. They had a right to commence selling lots immediately, provided they paid to the vendors one hundred dollars per lot; and for such lots the vendors, on the receipt of the money, were obliged to give the deed. I cannot see how there can be any doubt but that under the agreement the vendees were entitled to a conveyance of the land when they paid the purchase money. Upon the face of the agreement, the object of the covenants for improvements was for no other purpose than to secure the payment of the purchase money. The idea suggested in the answer, that the defendants had in view the philanthropic purpose of benefiting the health of the surrounding country, may be all true. It is very clear that this consideration was not sufficiently prominent in their minds to suggest the propriety of embodying it in the agreement. Judging by the agreement itself, and the court has not the right to look any further, it is evident that these covenants were intended to secure the payment of the purchase money, and for no other purpose. None can read the agreement, and doubt for a moment that the true legal and equitable construction of it is, that if, on the next day after its execution, the vendees had paid the full consideration money, they would have been entitled to a deed for the land. What propriety could there possibly be in the vendors retaining the title to compel the other party to make the improvements? If the improvements were not made, I doubt very much whether the vendors could maintain an action, and recover even nominal damages, after they had received the purchase money. While any part of the purchase money remained unpaid, they might insist upon the performance of the covenants, for this was the very purpose the covenants were intended to answer; but the

case would be very different after the purchase money was paid, and their interest in the land had entirely ceased. But if they could maintain an action upon the covenants, they had no *lien* upon the land for the faithful performance of them. They were personal covenants, and there was nothing pledged for their fulfilment but the personal responsibility of the parties. There is no time fixed, nor event mentioned in the agreement, when the deed is to be delivered. It seems to have been taken for granted that the vendees were to have their deed when they paid the purchase money. The improvements of the property would enable them to sell lots, to which both parties evidently looked to furnish the means by which the purchase money was to be paid. Until the money was paid, the vendors retained the power of compelling the other party to go on with the improvements, whether they sold any lots or not. If they refused after notice, the power was retained of forfeiting the contract. Everything in the agreement looked to securing the payment of the purchase money as the prominent purpose. I think it is manifest that this is the sole object of the covenants for improvements. They answered this end. The parties were enabled, at a much earlier period than any of them anticipated, to sell lots enough to pay off the purchase money. And I think this is the best evidence of the faithfulness with which the complainant and his associates performed these covenants.

The agreement of the 12th of October, 1852, which is a modification of the agreement we have been considering, does not in any way alter the legal rights of the parties, in the particulars referred to, from what they stood in the first agreement. It was not the intention of the parties to make any alteration as to those particulars. There were some very important alterations, which I shall not mention, as they are not at all material to this controversy.

The last agreement contains the covenant on the part of the vendors, the trustees of the East Newark Com-

pany, that when the complainant and Smith should have well and truly, according to the spirit, true intent, and meaning of the original agreement and of this agreement, paid, done, performed, and kept all the covenants and agreements therein contained, then and in that case the trustees of the East Newark Company would convey all the rest, remainder, and residue of the estate at East Newark that had not been sold and conveyed, but which remained unsold, to the complainant and said Smith.

The defendants place their refusal to convey upon the following grounds: that they are not bound to convey until the complainant has fulfilled all the covenants for improvements; that the consideration money has not been paid; that the mortgages which they have taken as security for the purchase money are liens upon the land, their value, as such security, depending upon the parties faithfully fulfilling their covenants for improvements, and that they were taken as such payment upon the understanding that the covenants were to be fulfilled; that, therefore, if even by the agreement the covenants to improve are mere personal covenants, whose fulfilment is not to be executed before a deed can be legally demanded, the defendants ought not to be compelled to execute a deed, and part with the land which they now hold as a pledge for the faithful fulfilment of the covenants. Lastly, the defendants contend, that if the complainant had a right to the conveyance, he has waived it by accepting the conveyance of the 500 lots.

By the agreement of 1852, the time for the payment of the consideration money was extended to the year 1860. The vendees were at liberty to pay it sooner. It was contemplated that they should proceed and sell the lots as fast as they could, and in this way, from time to time, with the proceeds, make payments on account of the consideration, and also carry on the improvements. Notwithstanding the phraseology employed, it is evident that the vendees were entitled to their deed as soon as they paid

the consideration. As to the improvements to be made, they were left very much to the discretion of the vendees. There was no specific amount of work to be done. They were to drain the land in the most advisable manner *in their judgment.* They were to dig down the high land and fill up the low land to the extent *they might deem reasonable and advisable.* They were to fill up the streets, to amend and repair the outside bank, build wharves, and to do any and every other act, matter, or thing needful or necessary to be done that might improve the said premises in the most advisable manner *in their judgment.* The evidence shows that they went on in good faith to make the improvements, and expended a large sum of money in doing so. Instead of taking eight years to sell lots enough to pay the purchase money, they sold enough in two years to pay it nearly twice over. The improvements added to the value of the property, and enabled them to sell the lots. Their success is an evidence of their good management, as well as of their good judgment in the improvements they made. Judging of the the expectations of the parties from the terms and tenor of the contract, their success very far exceeded those expectations. That the vendees, up to the term when they paid the purchase money and demanded their deed, had proceeded in good faith to fulfil all the covenants on their part, and to the full satisfaction of the defendants, is manifest from the following fact,—on the day that the last agreement was executed, and after it was reported to the board of trustees by Mr. Dey, the board entered upon their minutes a resolution declaring it to be the duty of Mr. Dey, as president of the board and as executive committee, whenever he should consider the contractors for the purchase of East Newark should fail or neglect to perform their several contracts, or any part of them, to take immediate measures to notify them of such neglect, and require from them a strict performance of the same, according to the said several agreements; and if they

should continue to neglect, and fail in the due and faithful performance thereof, according to the spirit, intent, and meaning of the said agreements, to call a meeting of the board to adopt such measures as they might deem expedient and necessary.

Notwithstanding this resolution, there is no intimation of any complaint on the part of Mr. Dey, or his associates, that the vendees had not faithfully performed all the covenants of the agreement on their part, until after the consideration had been paid, and until after the pretence had been set up, that the vendees were not entitled to their deed. Mr. Dey had negotiated with them for the payment of the balance of the purchase money, and had received it. He had reported to the board that the purchase money had been paid; and although in his report to the board, on the 11th of November, 1853, he stated that some difficulties had arisen in the construction of some of the covenants of the agreement, he did not intimate that up to that period there was any default on the part of the vendees in the performance of their covenants. It was not until February 15th, 1854, that he addressed them a letter of formal complaint that they had not fulfilled their covenants. The evidence clearly shows that up to the time when they paid the balance of the purchase money, and required a deed for the residue of the property, the vendees had faithfully fulfilled all their covenants. It was after difficulties had arisen in reference to their respective rights under the agreement that the vendees ceased their improvements, and determined to have their rights determined by a judicial tribunal. I think, when they demanded their deed, the defendants had no right to refuse upon the ground that the covenants respecting the improvements had not been fulfilled.

Another ground taken by the defendants is, that the consideration has not been paid. On or about the 1st of August, 1853, it was ascertained, by a statement of accounts made by Anthony Dey himself, that there was a

s*

balance due on account of the purchase money of $6921.61, and he agreed to receive nine promissory notes of Gilbert and Smith, amounting in the aggregate to this sum, in payment. On the 15th of August following, the notes were given, and Dey gave a receipt stating the respective amounts and dates of the notes, and that he had received them on settlement of the account between himself and Gilbert and Smith for the consideration of East Newark. In the agreement of the 30th of August, 1853, which was signed by Anthony Dey, it was recited that Gilbert and Smith had paid the company the whole of the consideration money agreed to be paid for the estate called East Newark, or otherwise secured the same to be paid in a satisfactory manner, so that nothing remained to be paid, done, or performed in the said original agreements, except as relates to draining the land, &c. On the 11th of November, 1853, Mr. Dey reported to the board that the consideration had been paid and satisfied. It is satisfactorily proved that the consideration was paid, part in money, part in bonds and mortgages, which were accepted as payment, and the balance by the nine promissory notes, as stated. These bonds and mortgages, to the amount of about $89,000, were passed off by the company to pay its creditors, and thirty-eight thousand dollars were transferred to Dey for a debt due him. The answer admits that it was arranged between Anthony Dey and the complainant and Smith that sales of lots on certain terms might be made, Dey being first advised before the completion of each particular sale, and bonds and mortgages be taken in the name of the trustees, and that if the said trustees could assign them in payment of the claims held by parties entitled to be paid out of the estate of East Newark, they could do so, and they should be regarded as so much on account of the consideration money of the first agreement. Notwithstanding the answer avoids telling us whether this agreement was carried out, it is proved that it was, and that the sales were made,

that the bonds and mortgages were taken in the name of the trustees, and were transferred and used by them in payment of claims against the company.

In the face of this accumulation of evidence as to the fact of the payment of the consideration, is the following denial in the answer: they deny that the consideration money originally agreed to be paid for said land has been paid or satisfied to the said company; that in truth and fact the greater part of the sum found by said accountant to be due still remains unpaid; and that, besides that, among the bonds and mortgages reckoned by said accountant as so much paid are the bonds and mortgages of said Gilbert and Smith for many thousand dollars, which cannot and ought not, being merely the covenant of the same parties to pay in another form, to be taken as payment of the amount due by them. This is technically true. The *money* has not been paid. The consideration has not all been paid in *money*, but mostly in bonds and mortgages, which have been received in lieu of money, and in satisfaction of the consideration which the vendees agreed to give for the property. The vendors have no further legal or equitable claim upon the vendees for the purchase money, nor have they any equitable lien or claim upon the land for it.

But it is said, on behalf of the defendants, they ought not to be compelled to convey the land, because the value of these mortgages which have been taken as payment depends upon the faithful fulfilment of the covenants to improve the property, and that it is right and equitable they should retain the title to the residue of the property as a security for the faithful fulfilment of the covenants. I cannot see that they have any such right. If the covenants are not fulfilled, they must look to the personal responsibility of the parties. As I have before said, the vendees have thus far performed all their covenants. Having paid the consideration, the vendors have no right to hold the land as a security for any future default. Sup-

pose, the day after the agreement had been made, the purchase money had been paid, it cannot be pretended that the vendors could have retained the title to the land as a security for the fulfilment of the covenants, or that they might have conveyed just so much of the land as they pleased, and have retained the residue as security. Having received bonds and mortgages as payment does not alter the rights of the parties in this respect. That they accepted the mortgages with the expectation that they were not bound to convey the land until the covenants were fully performed, cannot raise any equity in their behalf, unless they can show that this expectation was excited by the assurances or conduct of the vendees. This they have not done. If they have misunderstood their rights under the contract, such a mistake on their part cannot alter the rights of the other parties to it. It is very clear that the bonds and mortgages were given in payment by the vendees with the expectation that when the consideration was paid they were to receive a deed for the property, and that the vendors accepted them knowing that such was the vendees' expectation. It is a fraud upon the vendees to have accepted the mortgages knowing such to have been their expectation, and then to retain the mortgages, and refuse to comply with the terms upon which they were delivered.

The last ground taken by the defendants is, that by the complainant's accepting the conveyance of the 500 lots, he waived his right to a deed, if he had any, for the residue of the property until the covenants in dispute were fully performed. Anthony Dey, on the part of himself and his co-trustees, on the one side, and the complainant and Smith, on the other, made a settlement, and then entered into the agreement which we first considered, by which the complainant, among other things, was to have a conveyance of the residue of the land. He settled his accounts with Dey upon the basis of this agreement. The complainant waived a demand of $12,000, which seems

to have been well founded, and settled for the balance of the purchase, which was $6921.61, by promissory notes. Mr. Dey reported to the board the agreement, and they refused to confirm what he had done. He then reported that Gilbert and Smith " desired to have a portion of the property conveyed to them, leaving in the hands of the company a sufficient quantity as security for the due and faithful performance of the covenants and agreements contained in their agreement with the company." There is not a particle of evidence that Mr. Dey had any authority whatever, from the complainant or Smith, to make such a report. The whole tenor of the evidence and the negotiations and correspondence between the parties tend to show that he had no such authority. The conveyance of the 500 lots was accepted without any knowledge of the proceedings of the board, as far as the proof goes. At the same meeting, the board passed a resolution that the president of the board should convey *absolutely and unconditionally* 500 of the lots remaining unsold to Gilbert and Smith. It is true the complainant and Smith knew that the trustees claimed the right to hold the balance of the property, and they accepted the deed knowing this claim. But on the other hand, the trustees gave the deed, knowing that the complainant insisted upon their right to a conveyance of the whole without requiring them to relinquish such claim. The minutes of the 11th of November, 1853, must be laid out of view. They were the proceedings of the trustees, of which the complainant and Smith had no notice. Their rights cannot be affected by them. They are nothing more than the declarations of one party made in the absence of the other party. I do not think any rights were waived by either party by the giving or accepting the deed.

My opinion is, that upon the complainant's paying the notes mentioned in the receipt of the 12th of September, 1853, he is entitled to a conveyance of the residue of the land.